# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN
# MADISON DIVISION

| | |
|---|---|
| Mikayla L. Fellenz, | Civil File No.: 19-cv-946-wmc |
| Plaintiff, | |
| vs. | **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| The Stark Collection Agency, Inc., | |
| Defendant. | |

## INTRODUCTION

Plaintiff attempts to allege an ill-advised claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") based on a letter The Stark Collection Agency, Inc. ("Stark") sent regarding her unpaid financial obligation owed to TDS.

The now-challenged letter specifically informed Plaintiff that the "Creditor" was "TDS-MEDFORD – BO #0801." Nonetheless, Plaintiff attempts to claim that she was "confused" as to the identity of the creditor to whom she owed the debt.

As a threshold matter, Plaintiff's attempted claim fails on a jurisdictional level because Plaintiff fails to allege a concrete injury-in-fact. The Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Seventh Circuit's holding in *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019), and the Sixth Circuit's recent holding in *Buchholz v. Meyer Njus Tanick, PA*, ___ F.3d ___, 2020 WL 35431 (6th Cir. 2020) confirm that Plaintiff lacks standing.

Therefore, dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is warranted.

Even if Plaintiff had standing, Plaintiff's peculiar interpretation of the challenged letter is of the "bizarre" and "idiosyncratic" ilk the Seventh Circuit rejects as a matter of law. Plaintiff's

claimed interpretation of the letter represents a "fantastic conjecture" that is insufficient to state a claim under the FDCPA.

Accordingly, Stark alternatively requests the Court dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) for failure to state a claim.

## FACTUAL BACKGROUND

### I. PLAINTIFF'S ALLEGATIONS[1]

Plaintiff incurred a financial obligation with a creditor,[2] but failed to pay it. [Compl. ¶ 9.] The creditor placed the unpaid financial obligation with Stark for collection. [*Id*. ¶ 10.]

On October 29, 2019, Plaintiff received a letter from Stark. [*Id*. ¶ 11.] This was Stark's first communication with Plaintiff regarding the unpaid financial obligation. [*Id*. ¶ 13.]

The challenged letter—upon which Plaintiff bases her entire "claim"—informed Plaintiff that Stark was attempting to collect money Plaintiff owed to "TDS-MEDFORD – BO #0801." [*Id*. ¶ 16.] Despite this clear creditor identification, Plaintiff contends that the letter "fail[ed] to clearly indicate the entity to whom the debt is owed," and that Plaintiff "was unsure as to the precise entity to whom she is said to owe the subject consumer debt …." [*Id*. ¶¶ 15, 17.]

### II. ADDITIONAL FACTS

Plaintiff obtained internet services from TDS and was billed for internet service by TDS. [Declaration of Nate Kalnins, Ex. A.][3] On August 10, 2019, creditor TDS sent Plaintiff a bill for

---

[1] Stark treats the allegations in Plaintiff's complaint as true solely for purposes of this motion. Stark reserves the right to challenge Plaintiff's allegations at later stages of these proceedings, if necessary.

[2] Plaintiff inexplicably contends that she does not know the identity of the creditor, notwithstanding the fact that Stark listed the creditor as "TDS-MEDFORD – BO #0801." [*See* ¶¶ 15-17.]

[3] Although "[a] plaintiff is under no obligation to attach to her complaint documents upon which her action is based," a defendant nonetheless "may introduce certain pertinent documents if the plaintiff failed to do so." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th

2

those services. [*Id.*] The August 2019 TDS bill listed Plaintiff's TDS account number as ending in **0153**. [*Id.*] The TDS bill was addressed to "Mikayla Fellenz" at "118 S Park Ave, **Medford**, WI 54451." [*Id.* (emphasis added).]

The website referenced in the TDS bill identifies the creditor in the upper left portion of the screen as "TDS." [*Id.*; *see also* www.tdstelecom.com (last accessed January 7, 2020).][4] The TDS bill and the referenced website utilize the same "TDS" logo. [*Id.*] In fact, a simple Google search of "TDS" results in eight of the top ten "hits" linking to creditor TDS, with whom Plaintiff had the subject account.

The Stark letter Plaintiff attempts to challenge was sent to Plaintiff at "118 S Park Ave Apt B, **Medford**, WI 54451-171," and included the following:

Creditor: TDS-MEDFORD – BO #0801

Creditor Acct. No.: XXX-XXX-0153 07/09/2019

---

Cir. 1993) (citations omitted). When the pertinent document is attached to a motion to dismiss and the document is a "central component" to the complaint, the document is considered part of the pleadings. *Cancer Foundation, Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 n.1 (7th Cir. 2009) (citing *Venture Assocs. Corp.*, 987 F.2d at 431); *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

Here, Plaintiff attempts to allege that the creditor identification in the now-challenged letter ("TDS-MEDFORD – BO #0801") was "deficient" because it left her "unsure as to the precise entity to whom she is said to owe the subject consumer debt." [Compl. ¶¶ 16-17.] Accordingly, the TDS bill is "central" to Plaintiff's complaint and may be considered on Stark's motion to dismiss without converting it into a motion for summary judgment.

[4] It is appropriate for the Court to take judicial notice of the TDS website on this motion because the content of the website is an adjudicative fact "not subject to reasonable dispute" and "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned"—in this case, the website itself. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (citing Fed. R. Evid. 201(b); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995)).

[Kalnins Declaration, Ex. B (emphasis added).][5]

The challenged letter further stated, "TDS-MEDFORD – BO #0801 has referred an account to this office for collection." [*Id.*]

## ARGUMENT

**I.     LEGAL STANDARD**

    **A.     Federal Rule of Civil Procedure 12(b)(1) and Article III Standing**

Rule 12(b) permits a defendant to seek dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). For example, a defendant may challenge the plaintiff's standing to sue. *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009).

"In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Dig.*, 572 F.3d at 443). In a "facial" standing challenge, the court considers the complaint allegations to determine if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Apex Dig.* at 444.

"In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha*, 807 F.3d at 173 (citing *Apex Dig.* at 443-44).

The evaluation of a facial challenge to subject-matter jurisdiction predicated on lack of Article III standing begins with a simple premise: federal courts are courts of limited jurisdiction. *See, e.g., Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 679 (7th Cir. 2006) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). "Because of the limits on federal judicial power," courts have "a duty to determine that subject-matter jurisdiction exists

---

[5] It is appropriate to consider the challenged letter as part of the pleadings because it is central to Plaintiff's complaint. *Cancer Foundation, Inc.*, 559 F.3d at 675 n.1.

before reaching the merits of any case[.]" *Frerks v. Wyssbrod*, No. 16-CV-536-WMC, 2016 WL 5794813, at *1 (W.D. Wis. Oct. 4, 2016) (citing *Buchel-Ruegsegger v. Buchel*, 576 F.3d 451, 453 (7th Cir. 2009)), *appeal dismissed*, No. 17-1203, 2017 WL 3276776 (7th Cir. Feb. 17, 2017).

For subject-matter jurisdiction to exist, a court must be presented with a justiciable case or controversy. *Allen v. Wright*, 468 U.S. 737, 750–51 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377 (2014).

The Supreme Court has held that the "irreducible constitutional minimum of standing," consists of three elements:

(1) the plaintiff must have suffered an injury-in-fact (*i.e.*, one that is "concrete and particularized" or "actual and imminent, not conjectural or hypothetical)";

(2) that is fairly traceable to the challenged action of the defendant; and

(3) is capable of redress by a favorable decision from the court.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted).

The plaintiff bears the burden of establishing Article III standing. *Id*. at 561. If, as here, the plaintiff fails to establish standing at any point in the case, the complaint must be dismissed on this basis alone. Fed. R. Civ. P. 12(h)(3).

### B. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion asks the court to determine the sufficiency of the complaint (i.e., whether it states a claim upon which relief can be granted); nothing more, nothing less. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

5

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

On a Rule 12 motion to dismiss, the court is allowed to consider the complaint as well as any documents that are attached to the complaint. *Beam v. IPCO Corp.*, 838 F.2d 242, 243 (7th Cir. 1988) ("Beam's exhibit poses no problem under Rule 12(b) because the district court is entitled to consider exhibits attached to the complaint as part of the pleadings."); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2012) ("Because the letter was attached to the complaint, it became part if for all purposes … and so the judge could consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment."); *see also* Fed. R. Civ. P. 10(c). Likewise, any document central to the complaint allegations may be considered as well. *Cancer Foundation, Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 n.1 (7th Cir. 2009).

Dismissal is warranted under Rule 12(b)(6) when, even treating the alleged facts as true, the plaintiff has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 627 (7th Cir. 1999).

### C. Standard for Assessing Collection Letters

Courts in this Circuit examine collection letters from the perspective of an unsophisticated consumer. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Fields v. Wilber Law Firm, PC*, 383 F.3d 562, 564-66 (7th Cir. 2004)).

"The unsophisticated consumer is uniformed, naïve, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (internal quotation marks and bracketing omitted and citing *Williams v. OSI Educ. Servs., Inc.*, 505

6

F.3d 675, 678 (7th Cir. 2007); *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

As the Seventh Circuit put bluntly, "[t]he 'unsophisticated consumer' isn't a dimwit." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009). In applying the unsophisticated consumer standard, "as a matter of law, [courts] shall not entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter." *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006).

Because the unsophisticated consumer standard is <u>objective</u>, "a mere claim of confusion is not enough: a plaintiff must show that the challenged 'language of the letters unacceptably increases the level of confusion.'" *Durkin*, 406 F.3d at 415. (quoting *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1990)). As a result, a consumer-plaintiff alleging a claim under section 1692e or section 1692f of the FDCPA must demonstrate that the collection letter at issue would mislead or deceive "a significant fraction of the population." *Id.* at 414-15.

The Seventh Circuit has sorted FDCPA letter claims premised on alleged consumer "confusion" or "deception" into three categories. *Janetos*, 825 F.3d at 322-23 (attempted claims arising from "general prohibitions against false, deceptive, or misleading statements and practices," including those asserted under section 1692e, are covered by the three categories framework); *Lox*, 689 F.3d 818 (attempted claims arising from alleged misleading debt collection language covered); *Ruth*, 577 F.3d at 800 (alleged deceptive or misleading statements covered).

The *Janetos* court described the formulation of the three-category framework:

It is true that for claims under § 1692e, or at least those based on its general prohibitions against false, deceptive, or misleading statements or practices, we have sorted cases into three categories. The **first category** includes cases in which the challenged language is plainly and clearly not misleading. No extrinsic evidence is needed to show that the debt collector ought to prevail in such cases. The **second <u>Lox</u> category** includes debt collection language that is not misleading or confusing

7

on its face, but has the potential to be misleading to the unsophisticated consumer. In such cases, plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive. The **third category** is cases in which the challenged language is plainly deceptive or misleading, such that no extrinsic evidence is required for the *plaintiff* to prevail.

825 F.3d at 322-23 (emphasis added, internal quotations omitted, and citing *Ruth*, 577 F.3d at 800 and *Lox*, 689 F.3d at 822); *see also Durkin*, 406 F.3d at 414 ("so-called unsophisticated consumer or debtor" standard applies to § 1692f claims).

The letter in this case fall into the first category[6], where the collection letter is clearly <u>not</u> confusing or deceptive on its face such that no resort to extrinsic evidence is necessary. *Janetos*, 825 F.3d at 322-23 (citing *Lox*, 689 F.3d at 822). In such circumstances, the debt collector is simply entitled to judgment as a matter of law. Taylor v. Cavalry Inv., LLC, 365 F.3d 572, 574-75(7th Cir. 2000) ("If it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it—if as in *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000), the interpretation attested to by the plaintiff is a 'fantastic conjecture'—the court should reject it without requiring evidence beyond the letter itself.").

## II. FELLENZ LACKS STANDING

Last year, the Seventh Circuit considered the doctrine of Article III standing, as applied to FDCPA cases, and explained, "no harm, no foul." Casillas v. Madison Ave. Assocs., Inc., 926

---

[6] The other two categories within the framework are not applicable in this case.

F.3d 329, 331 (7th Cir. 2019).  Here, Plaintiff fails to allege any plausible harm based on the challenged letter.  Therefore, she lacks Article III standing.

### A. Article III Requires an Injury-in-Fact That Is Both Concrete and Particularized

The Supreme Court recently revisited the "injury-in-fact" predicate in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  In *Spokeo*, the plaintiff was found to have alleged a procedural violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), but failed to allege any concrete harm suffered as a result of the claimed violation.  *Id.* at 1550.

The Supreme Court concluded in *Spokeo* that in order to allege an "injury-in-fact," an alleged injury must be *both* concrete *and* particularized. *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560).  To be "particularized," a plaintiff "must allege a distinct and palpable injury to himself."  *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975).  The alleged injury must "affect the plaintiff in a personal and individual way."  *Lujan*, 504 U.S. at 560 n.1.

To be "concrete," the alleged injury cannot be abstract—it must be "real."  *Spokeo*, 136 S. Ct. at 1548.  In some instances, an injury need not be tangible to be concrete; intangible harms in certain circumstances can satisfy the requirement.  *Id*. at 1549.  The Supreme Court did note that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'"  *Id*. (quoting *Lujan* at 578).

But notably, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id*.  That is, "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id*.

In sum, a "bare procedural violation, divorced from any concrete harm, [cannot] satisfy the injury-in-fact requirement of Article III." *Id.*

The Seventh Circuit recently addressed Article III standing in the context of the FDCPA. *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019). In *Casillas*, the plaintiff sued the defendant under the Act, attempting to allege the defendant's validation notice failed to accurately set out the consumer's rights under the statute and was therefore legally insufficient. *Id.* at 331.

The district court dismissed the plaintiff's FDCPA claim, concluding that she lacked standing because she failed to allege how the letter's omission constituted a concrete injury-in-fact. *Id.* at 332–33. The Seventh Circuit affirmed, holding that the plaintiff lacked standing:

> Casillas did not allege that Madison's actions harmed or posed any real risk of harm to her interests under the Act. She did not allege that she tried to dispute or verify her debt orally and therefore lost or risked losing the statutory protections. Indeed, she did not allege that she ever even considered contacting Madison or that she had any doubt about whether she owed Harvester Financial Credit Union the stated amount of money. She complained only that her notice was missing some information that she did not suggest that she would ever have used. Any risk of harm was entirely counterfactual: she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them. Because Madison's mistake didn't put Casillas in harm's way, it was nothing more than a "bare procedural violation." *Spokeo*, 136 S.Ct. at 1549. Casillas had no more use for the notice than she would have had for directions accompanying a product that she had no plans to assemble.

*Id.* at 334.

Just this month the Sixth Circuit considered the application of the Article III standing doctrine to FDCPA claims in *Buchholz v. Meyer Njus Tanick, PA*, ___ F.3d ___, 2020 WL 35431 (6th Cir. 2020). There, the consumer received letters from a collection law firm, which he attempted to allege were not "meaningfully reviewed" by an attorney before they were sent. *Id.* at *1. The consumer further attempted to allege that after receiving the letters he "felt an undue sense

10

of anxiety that he would be subject to legal action if prompt payment was not made." *Id.* (internal quotation marks omitted).

The Sixth Circuit expressed skepticism as to whether "bare anxiety" can establish an injury-in-fact and rejected the consumer's "theory that [the debt collector defendant's] procedural violation [of the FDCPA], by itself, is an injury in fact." *Id.* at *5, 10.

### B. Plaintiff fails to allege a concrete injury-in-fact.

Plaintiff fails to plausibly plead a concrete injury-in-fact:

- The mere allegation that Stark failed to comply with the FDCPA does not confer Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 324 (7th Cir. 2019); *Buchholz v. Meyer Njus Tanick, PA*, ___ F.3d ___, 2020 WL 35431, at *9-10 (6th Cir. 2020).

- Plaintiff's claimed "distress," alone, is insufficient to confer standing. *Buccholz* at *4. Given the clarity with which Stark identified TDS in the now-challenged letter, Plaintiff has not plausibly pled any such "distress."

- Plaintiff does not allege that she requested verification from Stark or that she attempted to pay Stark (or that she even considered doing so). *See Stricklin v. First Nat. Collection Bureau, Inc.*, No. 10-cv-01027, 2012 WL 1076679, at *7 ("if Stricklin was truly confused as to the original creditor, she was invited to request the information regarding the original creditor per the instructions on the very letter she claims confused her in accordance with the FDCPA.").[7]

- The letter plainly identifies TDS as the creditor. Accordingly, the time Plaintiff purports to have spent "addressing and dealing with" Stark's letter, as well as the alleged "deprivation" of Plaintiff's ability to "intelligently address" the letter is self-inflicted. A self-inflicted injury does not confer standing. *See Buchholz* at *6 (citing *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1290 (D.C. Cir. 2007); *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzalez*, 468 F.3d 826, 831 (D.C. Cir. 2006); *Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276-77 (D.C. Cir. 1994).

---

[7] The letter Plaintiff attempts to challenge in this case contains the same invitation. [Kalnins Dec. Ex. B.]

Simply put, Plaintiff's allegations fail to even constitute a "hypothetical" injury, much less satisfy the concrete, injury-in-fact requirement. Therefore, dismissal of Plaintiff's attempted claim is warranted for lack of standing.

## III. THE CHALLENGED LETTER DID IDENTIFY THE CREDITOR

Even if Plaintiff had standing, her attempted claim fails as a matter of law. Section 1692g(a)(2) of the FDCPA provides that a debt collector must state in the initial notice, among other things, "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). Neither the Act nor the Seventh Circuit's interpreting case law requires the debt collector to identify the creditor in a certain way. *Smith v. Simm Associates, Inc.*, 926 F.3d 377, 380 (7th Cir. 2019).

The Federal Trade Commission staff has issued commentary on the FDCPA in which it explained that "[a] debt collector *may* use … its full business, the name under which it usually transacts business, or a commonly-used acronym." Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,107 (Dec. 13, 1988) (emphasis added).

Courts within this Circuit have extended the FTC's interpretation to apply to the names under which debt collectors may identify creditors. For example, in *Miller v. Southwest Credit Systems, LP*, a court in the Northern District of Illinois explained that "a debt collection letter is not plainly confusing … simply because the debt collector does not identify the creditor by its full business name or legal name of incorporation." No. 18-cv-4088, 2019 WL 5208857, at *5 (N.D. Ill. Oct. 16, 2019) (citing *Smith*, 926 F.3d at 380; *Leonard v. Zwicker & Assocs., PC*, 713 F. App'x 879, 883 (11th Cir. 2017)).

Likewise, in *Osideko v. L.J. Ross Associates, Inc.*, another Northern District of Illinois court ruled that the debt collector's description of the "current creditor" as "WEC (2134)

(PEOPLE'S GAS & COKE COMPANY)" complied with the FDCPA as a matter of law. No. 18-cv-3147, 2019 WL 1915666 (N.D. Ill. Apr. 30, 2019). The *Osideko* court cited the FTC staff commentary with approval, and noted that "'under the FDCPA, confusion is not in the eyes of the beholder …. [t]he Act protects the unsophisticated debtor, but not the irrational one.'" *Id*. at *3 (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1062 (7th Cir. 2000)).

As the Eastern District of Wisconsin succinctly explained, when it comes to identifying the name of the creditor in the initial communication:

> …it is reasonable to infer that any legitimate name under which the creditor operates could qualify as naming the creditor as required in § 1692g(a)(2). **This could include the use of a commonly used acronym**. There is nothing in the statute which indicates that debt collectors must use the creditor's incorporated name in order to comply with § 1692g(a)(2).

*Blarek v. Encore Receivable Mgmt., Inc.*, No. 06-cv-0420, 2007 WL 984096, at *7 (E.D. Wis. Mar. 27, 2007) (emphasis added).

Several more recent decisions from courts within the Seventh Circuit confirm this axiom:

- *Eul v. Transworld Sys.*, No. 15-cv-7755, 2017 WL 1178537, at *30-31 (N.D. Ill. Mar. 30, 2017) (granting collector's motion to dismiss because alleged failure to identify creditor by full legal name is not false or misleading as a matter of law);

- *Stricklin v. First National Collection Bureau, Inc.*, No. 10-cv-01027, 2012 WL 1076679, at *6 (S.D. Ill. Mar. 30, 2012) (ruling collector's reference to the original creditor "Sprint Nextel Corporation" as "Sprint Services" not misleading, and further noting that "Sprint Nextel Corporation is a publicly well-known company and an unsophisticated consumer who in fact had a cellular telephone contract with Sprint Nextel Corporation, like Stricklin, would not have been confused by the [alleged] misidentification."); and

- *Bode v. Encore Receivable Management, Inc.*, No. 05-cv-1013, 2007 WL 2493898, at *7 (E.D. Wis. Aug. 30, 2007) (plaintiff's attempted "hyper-technical FDCPA claim" failed as a matter of law where "assuming the most accurate name for the creditor was 'Capital One Bank,' given the similarity of the names 'Capitol One Services, Inc.' and 'Capitol One Bank,' no reasonable finder of fact could conclude that the stated name of the creditor would deceive or mislead an unsophisticated, but reasonable, consumer.").

13

Here, Plaintiff owes money to TDS—the same TDS that sent her bills for the services TDS provided to her. [Compl. ¶ 9; Kalnins Dec. Ex. A.] Moreover, "TDS" is both a "commonly-used acronym" and the name under which "Telephone and Data Systems, Inc." actually transacts business. [*See* www.tdstelecom.com (last accessed Jan. 7, 2020).]

The unsophisticated consumer (possessing reasonable intelligence and capable of making basic logical deductions and inferences) would readily and easily understand that "TDS-MEDFORD – BO #0801" means "TDS"—the entity that provided Plaintiff internet services. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018); *see also Dennis v. Niagara Credit Solutions, Inc.*, ___ F.3d ___, 2019 WL 7288044, at * (7th Cir. Dec. 30, 2019) (unsophisticated consumer capable of making "basic inference" that, where letter references "original creditor" and "current creditor," the "current creditor" purchased the debt).

Plaintiff's bizarre contention that *she* did not understand this fails to state a claim under the FDCPA. Stark properly identified TDS as the creditor to whom the debt is owed in the now-challenged letter. Plaintiff's attempted FDCPA claim simply fails.

## **CONCLUSION**

Put bluntly, <u>no one</u> would be deceived or confused—let alone "harmed"—by the letter Plaintiff is attempting to challenge. Accordingly, Plaintiff lacks standing. Alternatively, Plaintiff fails to state a claim.

In either event, this case is not about "vindicating" Plaintiff's rights under the FDCPA; it is yet another example of "'the FDCPA … being privately enforced mostly on the hyper-technical margins of permissible collection activity,'" which is "far removed from the debt collection practices the FDCPA was intended to address …." *Bazile v. Fin. Sys. of Green Bay, Inc.*, No. 18-

cv-1415, 2019 WL 652421, at *5-6 (quoting *Islam v. Am. Recovery Serv. Inc.*, No. 17-cv-4228, 2017 WL 4990570, at *3 (E.D.N.Y. Oct. 31, 2017)).

Accordingly, Stark respectfully requests the Court dismiss Plaintiff's complaint, in its entirety and with prejudice.

**BASSFORD REMELE**

*A Professional Association*

Date: January 17, 2020

/s/ *Patrick D. Newman*
Michael A. Klutho (#1038353)
Patrick D. Newman (#1093942)
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone: (612) 333-3000
Facsimile: (612) 333-8829
mklutho@bassford.com
pnewman@bassford.com

*Attorneys for The Stark Collection Agency, Inc.*